### TAYLOR v. GLOTFELTY.
#### No. 891.

United States District Court
E. D. Kentucky at Lexington.
Jan. 24, 1952.

Earl W. Taylor, pro se.

Claude P. Stephens, U. S. Atty., Kit C. Elswick, Asst. U. S. Atty., Lexington, Ky., for defendant.

FORD, Chief Judge.

The plaintiff, Earl W. Taylor, an inmate of the Medical Center for Federal Prisoners at Springfield, Missouri, seeks to recover damages from the defendant, Dr. H. Wayne Glotfelty, who, at the time of the acts herein complained of, was a psychiatrist in the official service of the institution and who, according to the complaint, exercised "personal care and custody of defendant".

The case is now submitted upon the defendant's motion to dismiss on the grounds:

(1) Lack of jurisdiction over the person of the defendant in that he is not subject to service of process within this district;

(2) Improper venue, and

(3) Failure to state a claim upon which relief can be granted.

In view of my conclusions in respect to ground (3), it seems sufficient to merely state that defendant's contentions as to grounds (1) and (2) appear untenable.

The material allegations of the complaint upon which plaintiff's cause of action rests are as follows:

"II

"Plaintiff avers:

"That from October 10, 1950 to June 30, 1951, defendant was employed by the United States as a psychiatrist, at the United States Insane Asylum, (U. S. Medical Center), located at Springfield, Mo.;

"III

"That Plaintiff, a Federal convict, convicted of the offense of attempted income tax evasion was transferred to the United States Insane Asylum at Springfield, Missouri, on October 10, 1950, pursuant to authority claimed under provisions of Sections 4082, 4085, and 4125, of T. 18, Act of 6–25–48; and that Plaintiff was placed under the personal care and custody of defendant and under the control of defendant on such date of October 10, 1950, or thereabouts;

"IV

"That between the dates of October 10, 1950, and June 30, 1951, defendant stated to divers persons, at the United States Insane Asylum, Springfield, Missouri, (U. S. Medical Center) that plaintiff had paresis or was paretic, and that plaintiff was psychotic or insane;

"That such statements were false and untrue;

"That such statements were made by defendant with malice afore-thought and that such statements are slanderous and have caused injury and grievous mental suffering and physical suffering upon Plaintiff;

"That during the month of October, 1950, and at the Federal property located at Springfield, Missouri, and described as the Medical Center for Federal Prisoners, and within the jurisdiction of United States Courts, defendant composed, prepared, uttered, and caused to be published as true, the following statements relative to plaintiff:

"1. 'With his paranoid delusions, lack of insight, faulty judgment, inability to repeat test phrase,—it seems we are dealing with an advanced case of paresis:

Diagnosis 002–147

General paresis'.

"2. 'There is slowness to association, decreased spontaneous activity, insight into his condition is practically lacking. Judgment is extremely faulty. Is able to remember recent and past events, but as stated, not accurately.'

"3. 'Unable to say, "around the rugged rock, the ragged rascal ran; truly rural; Methodist-Episcopal".'

all of which afore-mentioned statements, so uttered and published or caused to be published by defendant, were false and untrue; and were known to be false and untrue by defendant, when he caused such statements to be uttered and published.

"VI

"Plaintiff avers that defendant had never personally examined plaintiff, prior to the publishing of such afore-mentioned statements; that defendant had never asked plaintiff to repeat the test phrases above; that such statements are a part of stock phrases, employed by defendant, to individuals under his control; and that such statements concerning plaintiff which were published or caused to be published by defendant, were malicious and were caused to be published with malice aforethought, in attempt to punish plaintiff for having offered evidence to the Kefauver Committee, at the written request of Senator Kefauver."

From the allegations above set out, it appears quite clear that the acts of which the plaintiff complains were performed by the defendant in the discharge of his official duties and in relation to matters duly committed to him for determination. The Federal rule generally recognized, in the interest of public policy, is that even in

the presence of malice or other bad motive an official who acts within the general scope of his authority may not be subjected to the harrassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion. "Otherwise the perfect freedom which ought to exist in discharge of public duty might be seriously restrained, and often to the detriment of the public service." Cooper v. O'Connor, 69 App.D.C. 108, 99 F.2d 135, 141–142; Laughlin v. Rosenman, 82 U.S.App.D.C. 164, 163 F.2d 838; In re Wolrich, D.C., 84 F.Supp. 481.

I am of the opinion that, under the authorities above referred to, the complaint fails to state a claim upon which relief can be granted and, for that reason, the motion to dismiss should be sustained. An order will be entered in conformity herewith.