Wilbur A. SALE, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15374.

United States Court of Appeals
Eighth Circuit.

Jan. 13, 1956.

Karol A. Korngold, St. Louis, Mo., for appellant.

Charles H. Rehm, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before SANBORN, JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Appellant, Sale, appeals from an order of the District Court overruling his motions to dissolve and discharge attachment and to quash subpoena duces tecum, said order further directing Sale to ap-

pear before John F. Clarke, Special Agent, Internal Revenue Service, and to produce and deliver certain work papers in Sale's possession, prepared by an accountant for John Gazzoli and Albert Librach, hereinafter referred to as taxpayers, who were clients of Sale, an attorney at law.

■ Jurisdiction of this court is invoked under 28 U.S.C. § 1291. It would seem that the order appealed from is a final order and that an appeal lies. Brownson v. United States, 8 Cir., 32 F.2d 844, 846; Falsone v. United States, 5 Cir., 205 F.2d 734, 737; In re Albert Lindley Lee Memorial Hospital, 2 Cir., 209 F.2d 122, certiorari denied Cincotta v. United States, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104.

Special Agent Clarke was investigating the 1946–1949 tax liability of taxpayers for whom Sale acted as an attorney at all times material to this controversy. Rosenbaum had acted as part-time bookkeeper and accountant for the taxpayers, and in performing such duties had made out certain work papers which Rosenbaum retained with other papers in his office until 1953 when, at the request of taxpayers, such work papers were delivered to Sale who has since retained possession of such papers.

On May 4, 1953, Clarke, as Special Agent, executed and served upon Sale a summons to appear to testify and to produce the work papers and schedules prepared by Rosenbaum covering the years 1946–1949, said action being taken pursuant to section 3614 of the Internal Revenue Code of 1939.[1] Sale immediately upon receiving the summons advised Clarke by letter that the work papers requested were the property of his clients and were privileged communications in his hands as attorney, and that he could not comply with the summons unless directed by the court to do so. Slightly more than a year later, on May 19, 1954, the United States District Attorney at the request of the Commissioner of Internal Revenue filed petition for attachment in the District Court, alleging the issuance of the aforesaid summons and the refusal of Sale to appear in obedience thereto. On the same date the court ordered that an attachment be issued, and that the marshal bring Sale into court for appropriate action to compel obedience to said summons. Pursuant thereto, Sale was taken into custody by the marshal and was brought before the court and released on his own recognizance subject to further action of the court. Thereafter, Sale filed his motion to dissolve and discharge the attachment and to quash the subpoena duces tecum served upon him by the Special Agent. This case was submitted to the court on June 16, 1954. The order appealed from was entered on March 31, 1955. Thereafter upon Sale filing a $250 bond the execution of the order appealed from was stayed until this appeal is passed upon by this court.

Sale contends that the order of the trial court should be reversed for the following reasons:

I. Neither the Commissioner of Internal Revenue nor the Special Agent has any authority under the law to issue a summons or subpoena.

II. A petition for attachment is not an appropriate process within the meaning of section 3633. The court acquired no jurisdiction to order the appellant to comply with the summons.

III. The work papers of the taxpayers prepared by the accountant are the property of the taxpayers, and the privilege of attorney and client exists as to such papers.

We proceed to the consideration of the errors urged in the order above indicated.

■ I. Section 3614(a) [2] provides:

"The Commissioner, for the purpose of ascertaining the correctness of any return or for the purpose of

---

1. Statutory references in this opinion unless otherwise indicated are to the Internal Revenue Code of 1939 as amended, 26 U.S.C.A.

2. Commissioner's Reorganization Order No. 6, dated May 15, 1952 (17 F.R. 4587), delegated to the Directors of Internal Revenue authority under sections

making a return where none has been made, is authorized, by any officer or employee of the Bureau of Internal Revenue, including the field service, designated by him for that purpose, to examine any books, papers, records, or memoranda bearing upon the matters required to be included in the return, and may require the attendance of the person rendering the return or of any officer or employee of such person, or the attendance of any other person having knowledge in the premises, and may take his testimony with reference to the matter required by law to be included in such return, with power to administer oaths to such person or persons."

It is true, as contended by appellant, that the above section does not set out specifically how the Commissioner is to enforce the attendance of a person whose examination is authorized, nor is it specifically stated that the Commissioner or his delegate is authorized to issue a subpoena or a summons.[3] The right of the Commissioner or his delegate under the 1939 Internal Revenue Code to issue a summons has long been recognized. Brownson v. United States, supra; Falsone v. United States, supra; United States v. United Distillers Products Corporation, 2 Cir., 156 F.2d 872; Schulman v. Dunlap, D.C.S.D.N.Y., 105 F.Supp. 104; United States v. Peoples Deposit Bank & Trust Co., D.C.E.D.Ky., 112 F. Supp. 720, affirmed 6 Cir., 212 F.2d 86. In the Brownson case [8 Cir., 32 F.2d 849] the agent signed and served a summons upon a Western Union superintendent to produce records in connection with a receipt by the taxpayer of $500. The superintendent appeared but refused to produce the record. Thereupon, a writ of attachment was applied for and obtained. This court upheld the agent's summons and the attachment, concluding, "Our conclusion is that the steps taken by the Commissioner and by the court to secure the desired evidence were authorized and regular." The court in the course of its opinion states 32 F.2d at page 847:

"This testimonial duty to attend and disclose applies equally to the production of documents; and the process for documents will be implied wherever testimonial compulsion in general is predicated by a statute. Wigmore on Evidence, § 2193, and note."

In the Falsone case, supra, the Internal Revenue Agent served a summons upon taxpayer's accountant who refused to appear. The District Court upon Government's petition ordered the accountant to obey the summons. A motion to vacate the order and quash the summons was overruled. The judgment was affirmed on appeal, the court saying in part, 205 F.2d at page 742:

"We have heretofore noted that the power granted to the Commissioner by 26 U.S.C.A. § 3614 is inquisitorial in character and is similar to the power vested in federal

3614 and 3615 of the 1939 Code to examine books and witnesses. Commissioner's Reorganization Order No. 15, dated July 1, 1953 (1953–2 Cum.Bull. 505), granted authority to District Directors to redelegate these functions to any subordinate, except as otherwise directed.

3. Under the 1939 Internal Revenue Code agents' summons were issued under 3614 and collectors' summons were issued under 3615. These sections have been combined in the 1954 Code, 26 U.S.C.A., and section 7602, which specifically authorizes the Secretary or his delegate to issue summons. See also sections 7603–

7606, inclusive, of the 1954 Internal Revenue Code. The Report of the House Ways and Means Committee on the 1954 Internal Revenue Code, H.R. 1337, March 9, 1954, 1954 U.S.Code Congressional Service, p. 4584, and the Report of the Senate Finance Committee, 1954 U.S.Code Congressional Service, p. 5268, each state that section 7602 of the Internal Revenue Code of 1954 contains no material change from existing law. It seems clear that Congress in enacting the 1954 Internal Revenue Code did not consider that in specifically authorizing the Secretary or his delegate to issue summons it would be granting such officers any new powers.

grand juries. As said by the Eighth Circuit in Brownson v. United States, supra, 32 F.2d [844] at page 848, '* * * the statutes involved * * * should receive a like liberal construction in view of the like important ends sought by the government.' * * * "

The cases cited by the appellant do not support his contention that the Commissioner or his delegate lacks power to issue a summons. In Martin v. Chandis Securities Company, 9 Cir., 128 F.2d 731, the court states that it is expressing no opinion upon whether the summons was invalid because not issued by a collector. In re Wolrich, D.C.S.D.N.Y., 84 F.Supp. 481, enforces the Commissioner's summons and does not support the appellant's contention.

The Commissioner and his delegate, Special Agent Clarke, had authority under the facts disclosed in this case to issue the summons.

■ II. Section 3615 authorizes the Collector to issue summonses and specifically authorizes an attachment when a person summoned neglects or refuses to obey the summons issued under "this section." Since the Commissioner's summons is provided for in a different section, towit section 3614, there appears to be merit to the appellant's argument that the specific authorization for attachment in 3615 applies only to summonses issued under such section. However, section 3633 provides that the District Court shall have jurisdiction to compel attendance and production of papers by "appropriate process." This section clearly authorizes the enforcement of Commissioner's summonses issued pursuant to section 3614. Section 3800 also authorizes the District Court to grant in proper cases such order and process as may be necessary or appropriate for the enforcement of the revenue laws.

Is attachment an appropriate process to enforce the Commissioner's summons? We think that it is. As above stated, attachment is specifically authorized for enforcing a collector's summons. If attachment is an appropriate method for enforcing a collector's summons, we can see no logical reason why it would not be an appropriate process for enforcing the Commissioner's summons. The 1954 Revenue Code became effective on August 16, 1954. This case was submitted on June 16, 1954, but was not decided until March 31, 1955. Under such circumstances we shall assume that the provisions of the 1954 Code do not apply. However, we believe that it is of some significance that under sections 7602 and 7604 of the 1954 Revenue Code attachment is expressly recognized as an appropriate process for enforcing the Commissioner's summons.[4] Moreover, as we have heretofore pointed out, this court has specifically recognized the propriety of enforcing the Commissioner's sum-

4. Section 7604(b) of the Revenue Code of 1954 provides:

"Whenever any person summoned under section 7602 neglects or refuses to obey such summons, or to produce books, papers, records, or other data, or to give testimony, as required, the Secretary or his delegate may apply to the judge of the district court or to a United States commissioner for the district within which the person so summoned resides or is found for an attachment against him as for a contempt. It shall be the duty of the judge or commissioner to hear the application, and, if satisfactory proof is made, to issue an attachment, directed to some proper officer, for the arrest of such person, and upon his being brought before him to proceed to a hearing of the case; and upon such hearing the judge or the United States commissioner shall have power to make such order as he shall deem proper, not inconsistent with the law for the punishment of contempts, to enforce obedience to the requirements of the summons and to punish such person for his default or disobedience."

The legislative history of this section shows that Congress did not believe that it was giving the Secretary or his delegate any new powers by authorizing attachment. The House Ways and Means Committee Report, 1954 U.S.Code Congressional Service, p. 4584, and Senate Finance Committee Report, 1954 U.S. Code Congressional Service, p. 5268, contain the statement in effect that no change is made in existing law, relative to enforcement.

mons by attachment in the Brownson case, supra.

The District Court by issuing the attachment in this case determined that a proper showing for an attachment had been made. The attachment issued, and thereunder the appellant was produced before the court. The court upon appellant's motion to dismiss and quash upheld the regularity of the attachment.

The only authority cited for the appellant to sustain his contention that attachment is not a proper remedy is In re Wolrich, supra. That case, so far as here pertinent, merely holds that a subpoena duces tecum or an order to appear and produce is an appropriate process. The question of whether an attachment is an appropriate process was not before the court, and such issue was not discussed or decided.

We hold that the District Court acquired jurisdiction over the appellant by means of the service of the attachment and the production of the appellant thereunder. The court having acquired jurisdiction over the appellant was fully authorized to enforce the summons and direct the appellant to appear and produce the papers.

■■ III. The District Court held that the work papers the Special Agent was seeking "are and were at all times the property of the accountant, Max Rosenbaum." The evidence on the ownership of the work papers is conflicting. There is evidentiary support for the court's finding. The work papers had remained in the accountant's possession from 1949 to 1953 and had been kept in the accountant's office with similar work papers arising out of other transactions. We are unable to say that the court's decision on this issue was clearly erroneous. Since the court found that the work papers were the property of the accountant and not the property of the taxpayers, the issue of attorney-client privilege does not arise. No privilege exists between an accountant and his client which would preclude the production of the accountant's work papers. Falsone v. United States, supra. The

court committed no error in ordering the appellant to produce the accountant's work papers.

We have considered the errors urged by the appellant and are convinced that the trial court has committed no prejudicial error.

The judgment is affirmed.

JOHNSEN, Circuit Judge (concurring specially).

Except for the previous holding of this Court, in Brownson v. United States, 8 Cir., 32 F.2d 844, I should not be willing to regard sections 3614(a) and 3633 of the Internal Revenue Code of 1939, 26 U.S.C.A., as authorizing applications for personal arrests to be made, in enforcement of a Revenue Agent's investigative summons or subpoena.

Contempt or contumacy in the nature of contempt, as the basis for such an application, does not, and can not, in my opinion, legally exist in the administrative or executive branch of government— as it inherently does in the judicial field —except by virtue of an express legislative act directly creative of it.

Congress has, as to a few specific administrative summons and subpoenas, seen fit to create the right to an attachment against the person "as for a contempt". See e. g. § 3615(e), Int.Rev. Code 1939, and § 7604, Int.Rev.Code 1954. But in each instance, it has made the grant in unmistakable language, has restricted its application to the summons authorized by a named statutory section, and has prescribed the safeguards of a preliminary hearing on the application and an immediate hearing after the seizure, in relation to any exercise of the right. Sections 3614(a) and 3633 are without either language of such a grant or prescription of such safeguards.

I should not have supposed that a court would lend its sanction to any laying of hands upon an individual's person and the dragging of him bodily before a magisterial bench, for an administrative purpose and as an administrative incident, without being able to read, both for itself and to him, language from a

statute, which expressly spelled out the administrative right thus to have his liberty imposed upon and to have these indignities inflicted upon him.

The Brownson case, however, has done just this, and the majority here have both accepted that decision and approved its basis.

In this situation, I must officially bow to the established law of the Court, so far as the immediate statute involved is concerned.