**UNITED STATES of America and William W. Ankrom, Special Agent, Internal Revenue Service**

v.

**John A. HOWARD, President, Langley-Howard, Inc., Appellant.**

**No. 15296.**

United States Court of Appeals Third Circuit.

Argued Sept. 16, 1965.

Decided April 27, 1966.

James E. McLaughlin, Pittsburgh, Pa. (John A. DeMay and McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa., on the brief), for appellant.

John M. Brant, Esq., Dept. of Justice, Tax Div., Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Joseph M. Howard, Attys., Dept. of Justice, Washington, D. C., Gustave Diamond, U. S. Atty., Thomas A. Daley, Asst. U. S. Atty., of counsel, on the brief), for appellee.

Before BIGGS, Chief Judge, and KALODNER and GANEY, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from an order entered by the court below in an action authorized by Sections 7402 and 7604 of the 1954 Internal Revenue Code in connection with the examination of the income tax returns of John A. Howard, the defendant-appellant, president of Langley-Howard, Inc., and his wife Margaret L. Howard for the years 1956 to 1959, inclusive. The order appealed from requires Howard to comply with a summons issued and served upon him by Special Agent William W. Ankrom, Intelligence Division, Internal Revenue Service, requiring him to produce certain books and records of Langley-Howard, Inc. On some date which does not appear in the record, the books and records of the Howards for the years 1956 and 1957 were examined and a refund was made for one of these two years.[1, 2]

---

1. The specific year for which the refund was made does not appear in the record.

2. It appears from the record at Misc. No. 3019 in the court below which we have examined, but which apparently was not before the court below and of which it apparently did not take judicial notice, that a summons was issued on August 2, 1962 by Agent Ankrom pursuant to Section 7602 of the Internal Revenue Code of 1954, entitled "In the Matter of the Tax Liability of John A. Howard and Margaret L. Howard" addressed to "John A. Howard, President, Langley-

On August 15 1962, a letter was written by Robert D. McDowell, Acting Regional Commissioner of the Internal Revenue Bureau, addressed to the Howards informing them that "[I]t is deemed necessary before finally closing your income tax case to make a reinvestigation of your books and records for the years 1956 and 1957 in order to properly verify your returns for these years. A re-examination, therefore, will be made. * * * This notice is sent in compliance with Section 7605(b) of the Internal Revenue Code of 1954." [3] Acting Regional Commissioner McDowell's letter of August 15 was delivered by Agent Ankrom to Howard on August 16, and at the same time Agent Ankrom served on Howard as president of Langley-Howard, Inc., a summons, "Form 2039", issued pursuant to Section 7602 of the Internal Revenue Code of 1954, requiring him to appear and produce on August 29, 1962, certain books and records of Langley-Howard, Inc., pertaining to the years 1956, 1957, 1958 and 1959. A copy of the summons, marked "Exhibit A", is attached to the complaint in the suit at bar. On August 16, 1962, an investigation of Langley-

Howard's books and perhaps also a criminal proceeding was pending in the court below against Howard and Langley-Howard, Inc., for violation of the "Securities Act of 1933" for certain transactions which had taken place in respect to the stock of "Universal Fuel and Chemical Corporation." [4] Agent Ankrom's own testimony makes clear that at the time the summons was served on Howard to produce the books and records of Langley-Howard, Inc., he knew that the books and records sought to be subpoenaed were not in Howard's possession or in the possession of Langley-Howard, Inc., but were actually in the office and the custody of the United States Attorney for the Western District of Pennsylvania. It is not clear from the record how long the Langley-Howard, Inc. books and records were in the possession of the United States Attorney or in his office, but it is clear that they were there for some months and it appears also, according to Agent Ankrom's own testimony, that he inspected them there. [5]

On August 28, 1962, Howard filed an application to the court below alleging that the summons was served for im-

---

Howard, Incorporated [*sic.*]" to require Howard as president of Langley-Howard, Inc. to produce certain specified records of the company, largely those referred to in the later summons hereinbefore referred to in this opinion. The summons of August 2, 1962, dealt with the years 1956 to 1959, inclusive. It was quashed by the court below insofar as it related to the years 1956 to 1958, inclusive. It was sustained only as to the year 1959 save as to certain "catch-all" language which need not be set out here. After an appeal was taken to this court the parties stipulated that the appeal be withdrawn and an appropriate dismissal order was made. This prior suit is referred to in note 1 cited to the text in Application of Howard, 210 F.Supp. 301, 302 (W.D. Pa. 1962).

3. Section 7605(b) provides: "No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer

in writing that an additional inspection is necessary."

4. The record does not state with any greater degree of particularity than indicated in this opinion the nature of the criminal proceeding against Howard and Langley-Howard, Inc., or when the investigation or the suit commenced. It does appear that the criminal proceeding in the court below was at Criminal Action No. 61–316, indicating, perhaps, that it was commenced in the year 1961. The court below found as of the date of its findings, January 13, 1965, that the criminal action was no longer pending. There is sufficient evidence to support this finding. Counsel for Howard has sought to enlarge the record respecting Ankrom's actions by statements in their brief not supported by the record. We have had occasion repeatedly to state that statements made by counsel in their briefs are not evidence. See, for example, Williams v. Murdoch, 330 F.2d 745 (3 Cir. 1964), note 3 cited to the text at 749.

5. Agent Ankrom made a distinction in his testimony in the instant case between *inspection* and *examination*.

proper purposes; *i. e.*, to permit the United States to secure further evidence in the pending criminal case and to annoy and harass him. Howard also asserted as a further reason for quashing the summons that a previous examination of his returns had been made and that another examination was prohibited by Section 7605(b) of the Internal Revenue Code, 26 U.S.C. Section 7605(b). The court below quashed the summons insofar as it related to the "reinvestigation for the years 1956 and 1957" but, in substance, upheld the summons insofar as it related to the years 1958 and 1959. See Application of Howard, 210 F.Supp. 301 (1962), at Misc. No. 3024 in the court below. On appeal this court held that the application for enforcement which named no defendant, stated no basis of jurisdiction and asked for no judgment against anyone was not in accordance with the Federal Rules of Civil Procedure, 28 U.S.C., restricting original civil proceedings in a United States district court to a single form of action commenced by a complaint, naming parties, stating the basis of jurisdiction and demanding specified relief against a designated person. This court reversed the judgment and remanded the case with instructions to dismiss the application. See *id.*, 325 F.2d 917 (1963). Our mandate issued on January 22, 1964. No application for certiorari was made to the Supreme Court.

Thereafter, on January 29, 1964, Agent Ankrom "handed" Howard a letter signed by District Director John H. Bingler, by Cresson O. Davis, Chief, Intelligence Division, addressed to "Langley Howard, Incorporated; Attention John A. Howard, President; In re: John A. and Margaret L. Howard, Pittsburgh, Pennsylvania". This letter, after referring to the summons, "Form 2039", previously served, as has been said by Agent Ankrom on August 16, 1962, states that "[f]or your information there is enclosed a certified photocopy of this Summons", and goes on to say: "By a decision rendered December 23, 1963, in Case No.

14,272, the United States Court of Appeals for the Third Circuit * * * reversed the judgment of the District Court, Pittsburgh, Pennsylvania, and thereby voided the quashing of this Summons by Judge Dumbauld. The Mandate by the Court of Appeals to the District Court was issued January 22, 1964. * * You are required, therefore, to comply with the above described Summons by 10:00 A.M. of Wednesday, February 12, 1964."

Neither Howard nor Langley-Howard, Inc., complied with the copy of the summons handed to him with District Director Bingler's letter by Agent Ankrom on January 29, 1964. As a result Civil Action No. 64–450 was instituted in the court below on May 8, 1964. The complaint, then before that court at its No. 64–450 Civil Action, and *sub judice* here, was filed against "John A. Howard, President, Langley-Howard, Inc." and alleged that Ankrom had been conducting an investigation of the tax liabilities of the Howards for the taxable years 1956 to 1959 inclusive; that in connection with this investigation "a summons was served" pursuant to Sections 7602 and 7603 of the Internal Revenue Code of 1954, 26 U.S.C. Sections 7602 and 7603, upon Langley-Howard, Inc., through its president, Howard; that the "summons" was served on the defendant by Ankrom, describing and designating the books and records of Langley-Howard, Inc. which were to be produced "on August 29, 1962."

The complaint then refers briefly to the proceedings at Misc. No. 3024 in the court below and in this court at our No. 14,272, hereinbefore referred to and reported respectively, as we have stated, at 210 F.Supp. 301 and 325 F.2d 917; sets out the delivery of Bingler's letter on January 29, 1964, by Ankrom with a photocopy of the summons served on August 16, 1962, together with a copy of Bingler's letter of January 29, 1964, stating that the return date of the "summons" was February 12, 1964;[6] that Howard appeared with his attorney but

6. Later extended to February 16, 1964.

refused to comply with the summons; that the summoned material is vital to the continuation of the investigation and examination of the tax liabilities of the Howards, and requests enforcement of the summons. The complaint is accompanied by an exhibit which contains a verbatim interview held when Howard appeared and an affidavit by Ankrom stating that the examination is necessary because of certain alleged dealings by Howard in the acquisition and sale of a substantial number of shares of a certain stock and alleges "possible fraudulent evasion of individual income tax" by Howard.

Howard moved to dismiss the complaint, filed notices of the taking of depositions and interrogatories directed to Ankrom and other persons in the Internal Revenue Service and an answer denying all allegations of the complaint except one, namely, that one of the plaintiffs was the United States of America. On June 9, 1964, a brief pretrial order was entered by the court below, and on June 16 the United States moved to vacate and set aside the applications to take depositions and to require the answering of the interrogatories. On August 8, 1964, the court below fixed a time for hearing the motions by the plaintiffs, the United States and Ankrom, to vacate and set aside or to dismiss the motions filed by Howard, as well as "the demand of the United States for enforcement of summons". On November 17, 1964, an argument was had on the plaintiffs' motions but the court took no action thereon and adjourned awaiting the briefs of the parties.

On December 7, 1964, Howard filed an amended answer alleging that the United States was conducting its investigation for improper purposes to obtain evidence for use in a criminal prosecution; to harass the defendant, and not in good faith; that the books and records had been examined already by the United States during the pendency of the prior proceedings at Criminal Action No. 61–316; and finally, that the issues involved "were substantially litigated" in the criminal action and decided adversely to the plaintiffs. Other motions were made by Howard which need not be related here.

■ On December 8, 1964, Howard moved for sanctions to compel the United States and Ankrom to appear for the taking of depositions and to answer interrogatories. The plaintiffs filed a supplementary motion to dismiss or to vacate Howard's then latest motion. On December 23, 1964, a hearing was had in the court below and Agent Ankrom appeared as the sole witness. One exhibit was offered in evidence, the letter of August 15, 1962 signed by Acting Regional Commissioner McDowell, hereinbefore referred to. On December 23, 1964, the court below made a verbal order denying Howard's numerous motions. On January 11, 1965, the trial court, without an opinion, decided that the "summons of January 22, 1964," should be enforced. On January 11, 1965, an order was entered adopting the proposed findings and conclusions filed by the United States.[7] The appeal at bar followed.

The defendant-appellant, Howard, asserts (1) that there is no sufficient proof in the record that the "Secretary [of the Treasury] or his delegate, after investigation" notified the taxpayer in writing that an additional inspection was necessary; (2) that the court's process was abused when the United States issued a summons to secure information, part of which was available to it for a period of more than ten months in the transcript of the trial at Criminal Action No. 61–316 in the court below, note 5, supra, and finally, (3) that when the United States brings a civil action seeking enforcement of a summons under 26 U.S.C. Section 7602(2) of the Internal Revenue Code of 1954, the party summoned is entitled to

---

7. The court below did not see fit to make any findings of fact or conclusions of law except those submitted by the United States, which were adopted *in haec verba*.

On several occasions we have expressed our disapproval of this undesirable practice. See, for example, Roberts v. Ross, 344 F.2d 747, 751–752 (3 Cir. 1965).

avail himself of the Federal Rules of Civil Procedure, 28 U.S.C., including those relating to discovery, to determine whether or not the inspection is justified. The United States, of course, contends to the contrary.

As to Howard's first contention, it should be noted that any re-examination of the books and records of the Howards by the Internal Revenue Service relates to the years 1956 and 1957 only and that their books and records for the years 1958 and 1959, insofar as the record shows, have never been examined. Giving the Howards the benefit of every doubt, however, and assuming that their books and records for the years 1958 and 1959 are inseparable in contents from those for the years 1956 and 1957, we would be required to hold, if the issue were relevant here, that there has been no sufficient showing of a determination by the Internal Revenue Service that re-examination of the books and records of the Howards for the years 1956 and 1957 was "necessary" within the purview of Section 7605(b). Agent Ankrom testified that he recommended the re-examination to his immediate superior, Chief of Intelligence Division Davis, who had the authority to approve the recommendation and to forward it to the Regional Office where higher authority could authorize re-examination. The court below, as trier of the facts, found that the letter of August 15, 1962, Exhibit No. 1, signed by Acting Regional Commissioner McDowell was the result of Agent Ankrom's recommendation to his immediate superior sent forward by the latter to the Acting Regional Commissioner who acted favorably on the request as the "delegate" of the Secretary of the Treasury.[8, 9]

The United States insists that since the letter was issued the presumption of regularity which attends official action is evidence that its issuance was legal, citing inter alia, Stearns Co. of Boston, Mass. v. United States, 291 U.S. 54, 63–64, 54 S.Ct. 325, 78 L.Ed. 647 (1934). But in United States v. Powell, 379 U.S. 48, 57–58, 85 S.Ct. 248, 255, 13 L.Ed.2d 112 (1964), Mr. Justice Harlan speaking for the Supreme Court stated: "[The Commissioner] must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed—in particular, that the 'Secretary or his delegate,' after investigation, has determined the further examination to be necessary and has notified the taxpayer in writing to that effect." There is no evidence that the Acting Regional Commissioner made any investigation and he did not notify the Howards and state that he had made a determination of the necessity of a re-examination after he had made an investigation. If our decision turned on this point, we would be compelled to decide in favor of Howard.

But the case does not turn on such an issue for the books and records sought to be examined do not belong to

---

8. While objection was made to the admission of the letter of August 15, 1962, Exhibit No. 1, on the ground that the original was not produced with Commissioner McDowell's signature thereon, the original was in the possession of Howard or Langley-Howard, Inc. But in any event we understand that the real thrust of Howard's argument does not go to the issue of whether Acting Regional Commissioner McDowell actually signed the letter but that there is no showing that he made an independent investigation of the necessity for a re-examination.

9. The term "delegate" is not defined by the Internal Revenue Code of 1954 and we can find no regulation or ruling of the Bureau of Internal Revenue which describes or defines that term. We note, however, in United States v. Powell, 379 U.S. 48, 49–50, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the necessity for the "additional examination" had been determined by a "Regional Commissioner". The issue of the status of a Regional Commissioner as a "delegate" of the Secretary was perhaps not in focus before the Supreme Court but it should be observed that able counsel apparently did not see fit to raise such an issue.

the Howards but to a third party, a corporation, Langley-Howard, Inc. These books and records have not been examined by the Internal Revenue Service unless the inspection made by Agent Ankrom while they were in the custody of the United States Attorney at Pittsburgh be deemed to constitute such an examination. But we need not decide this point for we hold that the phrase "after investigation" of Section 7605(b) is inapplicable where the Internal Revenue Service seeks not to examine the records of the taxpayers, the person or persons actually under investigation, here the Howards, but the records of a third party corporation. De Masters v. Arend, 313 F.2d 79, 86 (9 Cir. 1963). This prohibition of Section 7605(b) applies by its express terms only to records of a taxpayer. It does not prevent the Internal Revenue Service from seeking information from other sources. It could be argued, prior to the decision of the Supreme Court in Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), that Howard does not have standing under the circumstances at bar to raise an issue as to the right of the Internal Revenue Service to examine the books of the corporation.[10] See Sections 7402 and 7604 of the Internal Revenue Code of 1954. Cf. United States v. Powell, supra.

■ But it appears from the record in the instant case that Howard as president of Langley-Howard, Inc. was summoned to produce the records of that corporation. This was in connection with the examination sought to be conducted by the Internal Revenue Service of Howard's and Mrs. Howard's own tax records. In Reisman v. Caplin, supra, at 449 and 450, 84 S.Ct. at 513, and 514, respectively,

where a summons issued pursuant to Section 7602 of the Internal Revenue Code of 1954 was under consideration as here and the provision of Section 7604(b) relating to attachment "as for a contempt" was also discussed, the Supreme Court stated: "Furthermore, we hold that in any of these procedures before either the district judge or United States Commissioner, the witness may challenge the summons on any appropriate ground. This would include, as the circuits have held, the defenses that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution, Boren v. Tucker, 9 Cir., 239 F.2d 767, 772–773, as well as that it is protected by the attorney-client privilege, Sale v. United States, 8 Cir., 228 F.2d 682. In addition, third parties might intervene to protect their interests, or in the event the taxpayer is not a party to the summons before the hearing officer, he, too, may intervene", and "Nor would there be a difference should the witness indicate—as has Peat, Marwick, Mitchell & Co. —that he would voluntarily turn the papers over to the Commissioner. If this be true, either the taxpayer or any affected party might restrain compliance, as the Commissioner suggests, until compliance is ordered by a court of competent jurisdiction. This relief was not sought here. Had it been, the Commissioner would have had to proceed for compliance, in which event the petitioners or the Bromleys might have intervened and asserted their claims."

■ The second point raised by Howard is that there has been an abuse of process by the United States because the books of Langley-Howard, Inc., were

10. The summons of August 16, 1962 and that of January 22, 1964, treating the latter paper as a summons, go no further than the records of the corporation. It should be noted that the letter of District Director Bingler attached to the complaint as Exhibit B is addressed to "Langley-Howard, Incorporated [sic.]", and not to the Howards, albeit it is marked to the "Attention: John A. Howard, President. In re: John A. and

Margaret L. Howard, Pittsburgh, Pennsylvania". The Internal Revenue Service has made a distinction between the records of the Howards and those of Langley-Howard, Inc. It is stated that Howard is a large stockholder and perhaps the owner of Langley-Howard, Inc., but in a matter of this kind it would be improper to attempt to pierce the veil of a corporate entity.

available and in the possession of the United States Attorney for a substantial period of time and were then and there inspected by Agent Ankrom and therefore should not be subject to further examination. We hold that there has been no showing by Howard that the inspection made by Agent Ankrom was more than a cursory one and neither this court nor the court below is entitled to substitute its discretion for that of the Internal Revenue Service as to the sufficiency of an inspection or examination of books and records. As to the fact that the Internal Revenue Service has the right to inspect original documents and is not required to depend upon photostatic copies of original documents made by other bureaus or commissions such as the SEC, under the circumstances, and on this phase of the case, we cannot say that the court below indulged in or permitted any abuse of process. Id., supra, 379 U.S. at 58, 85 S.Ct. 248.

The third point raised by Howard is that the Federal Rules of Civil Procedure apply and that therefore the court below erred in not requiring the United States and Agent Ankrom to answer the depositions and permit discovery. While we note that in Powell, id., supra, in note 18 cited to the text at 58, 85 S.Ct. 248, the Supreme Court stated that the Federal Rules of Civil Procedure apply to proceedings under Section 7604(a), nonetheless the court below in a proper exercise of its discretion ordered that under Rule 81(a) (3) the United States did not have to comply with the various discovery notices. We cannot say that the court abused its discretion in making such an order. An examination of the interrogatories filed by Howard demonstrates their extreme broadness and their lack of utility save as an harassment to the United States. It appears that Agent Ankrom has reasonable grounds to inspect the records of Langley-Howard, Inc. We conclude that Howard's desire for discovery is more a matter of form and tactics than of substance. Loubriel v. United States, 9 F.2d 807, 808 (2 Cir. 1926). Cf. United States v. Ventresca,

380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

But nonetheless we feel compelled to reverse the decision of the court below on issues not raised directly by Howard but by this court *sua sponte*. It is as follows. The United States asserts that the summons of August 16, 1962 was reissued and the court below so found. It is true that Agent Ankrom attempted to reissue the summons of August 16, 1962, directing Howard to produce the books and records of Langley-Howard, Inc. on August 29, 1962, a date already more than a year and a half past, and this incapacity in the "reissued" summons was not aided by the fact that District Director Bingler by his letter of January 29, 1964, handed to Howard by Agent Ankrom with the "reissued" summons on that date, set February 12, 1964 as the day for Howard's appearance with the books and records of Langley-Howard, Inc. A summons should be complete on its face, stating the date on which the summoned person is required to appear and should not require supplementing by a letter setting up a date for the required appearance different from that stated in the summons. Emphasis is laid upon the fact that the summons, ordered quashed by Judge Dumbauld, 210 F.Supp. 301, was in effect reconstituted by the decision and order of this court, 325 F.2d 917, but Agent Ankrom knew when the summons was served on Howard to produce the books and records of Langley-Howard, Inc. on August 29, 1962 that he could not do this for these books and records were not in the possession or control of Howard but were then in the possession and control of the United States. It is the general rule that in order for a summons to be deemed valid the records required to be produced must be in the possession or under the control of the person summoned. Dean v. Superior Court, 84 Ariz. 104, 324 P.2d 764, 73 A.L.R.2d 1 (1958); In re Ironclad Mfg. Co., 201 F. 66 (2 Cir. 1912). Cf. First National City Bank of New York v. Internal Revenue Service, 271 F.2d

616 (2 Cir. 1959). We conclude that the summons was invalid when originally issued and that, therefore, without regard to any defects in form of the "reissued summons", it also was invalid. This point was not before this court on the prior appeal. We are aware that the practices of agencies and bureaus of the United States are to be construed liberally and that the formalities which apply in courts should not be required of them strictly, but we conclude in the light of all of the circumstances at bar that the course pursued here is impermissible.

For the reasons stated the order of the court below will be reversed and the case will be remanded with the direction to quash the "reissued summons". Our decision and order are without prejudice to the right of the Internal Revenue Service to issue a new summons to Howard as provided by law for the production of the books of Langley-Howard, Inc.